**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELIZABETH MANUEL and VIVIEN GROSSMAN on behalf of themselves, all others similarly situated, and the general public,<br><br>            Plaintiffs,<br><br>                    v.<br><br>PEPSI-COLA COMPANY,<br><br>            Defendant. | Case No.: 17-cv-07955<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF NEW YORK'S UNFAIR AND DECEPTIVE BUSINESS PRACTICES LAW, FALSE ADVERTISING LAW, NEGLIGENT AND INTENTIONAL MISREPRESENTATION, RESTITUTION, AND BREACH OF EXPRESS & IMPLIED WARRANTIES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs ELIZABETH MANUEL and VIVIEN GROSSMAN, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby brings this action against PEPSI-COLA COMPANY ("Pepsi"), and alleges the following upon their own knowledge, or where they lack personal knowledge, upon information and belief including the investigation of their counsel.

## INTRODUCTION

1.      Pepsi's ubiquitous beverage, Diet Pepsi, is sweetened with aspartame acesulfame-potassium and sucralose, which are non-caloric sweeteners, rather than sugar. Because of the product's use of the term "diet," and its lack of calories, consumers reasonably believe that drinking Diet Pepsi will assist in weight loss or healthy weight management.

2.      Scientific evidence demonstrates this is wrong because nonnutritive sweeteners like aspartame acesulfame-potassium and sucralose interfere with the body's ability to properly metabolize calories, leading to weight gain and increased risk of metabolic disease, diabetes, and cardiovascular disease.

3.      Accordingly, Pepsi's marketing Diet Pepsi as "diet" is false, misleading, and unlawful.

4.     Plaintiffs bring this action on behalf of themselves, other Diet Pepsi consumers, and the general public, to enjoin Pepsi from continuing to misleadingly advertise Diet Pepsi, and to recover restitution and damages for the class.

## INTRADISTRICT ASSIGNMENT

5.     Pursuant to Local Civil Rule 50.1(d)(2)(b)(1), this action is properly assigned to the Manhattan Courthouse, because, as further set forth herein, a substantial part of the events or omissions giving rise to the claims occurred in New York County.

## THE PARTIES

6.     Plaintiff ELIZABETH MANUEL is a resident of Bronx County, New York.

7.     Plaintiff VIVIEN GROSSMAN is a resident of Nassau County, New York.

8.     Pepsi-Cola Company is a Delaware corporation with its principal place of business at 700 ANDERSON HILL ROAD, PURCHASE, NEW YORK, 10577.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, at least one member of the class of plaintiffs is a citizen of a State different from Pepsi.

10.     The Court has personal jurisdiction over Pepsi because Pepsi is authorized to transact business in New York by the Department of State and has its principal place of business in New York. Further, Pepsi advertised, marketed, distributed, offered for sale, and sold its product Diet Pepsi to consumers in New York and the United States, transacting business in New York County, in New York, and throughout the United States, including without limitation through extensive on-the-shelf presence in New York County, and online marketing intended to reach consumers in New York County. Moreover, Pepsi has sufficient purposeful, systematic, and continuous minimum contacts with the various states of the United States, including New York, and has sufficiently availed itself of the markets of various states of the United States, including New York, to render the exercise of personal jurisdiction by this Court permissible.

11.     Venue is proper in this Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial portion of the acts forming the basis for the claims occurred in this district, and because Pepsi transacts substantial business generally in this district.

## FACTS

**A.     Diet Pepsi is Marketed to Assist in Weight Loss and Healthy Weight Management Due to Its Non-Caloric Artificial Sweeteners**

12.     PepsiCo first introduced a diet soft drink product into the market in 1963, which it called Patio Diet Cola.  The following year, PepsiCo renamed the drink "Diet Pepsi."

13.     Pepsi uses the term "diet" in Diet Pepsi, on both its label and in advertising.

14.     Dictionary definitions of the term "diet" commonly refer to weight loss.

15.     Pepsi uses the term "diet" to market Diet Pepsi because the product is sweetened with a non-caloric artificial sweeteners, rather than sugar.  Because a representation that a product is "diet" inherently and necessarily implies it will assist in weight loss, Pepsi's implicit promise is that, because Diet Pepsi does not contain calories, it will assist in weight loss, or at least health weight management, *i.e.*, will not cause weight gain (in the same way that drinking water could not possibly result in weight gain).

16.     Due to the prominent use of the term "diet" in the product's name, Diet Pepsi, consumers reasonably believe that the product will assist in weight loss, or at least healthy weight management, for example, by not causing weight gain.

17.     PepsiCo reinforces this message through the use of advertisements that emphasize the beneficial effects of the product on body weight and composition.

18.     For example, a Diet Pepsi ad from 1977 shows a woman putting on tight jeans, with the message, "You can do it. We can help."



19.     Other examples of such advertisements appear below.











20.     Similar themes were repeated in television commercials.  For example, a series of commercials in the 1980s were made with the theme and tag line, "Now you see it. Now you don't," featuring fit men and women and emphasizing their fit bodies. (https://www.youtube.com/watch?v=46tATK43DG8)

21.     Another commercial emphasized "feeling good about yourself," stating:

> You're feeling good about yourself. You're drinking diet Pepsi Cola with just one calorie and that great honest to Pepsi taste and it shows in the way you look, you feel, and in everything you do. Diet Pepsi: One small calorie, one great taste.

(https://www.youtube.com/watch?v=gfVQcrxE_0U)

**B.      Non-Nutritive Sweeteners Cause Weight *Gain***

22.      Artificial, nonnutritive sweeteners were first introduced in the early 20th century, and thus humans have been consuming them for only about a century. They are typically 300 - 13,000 times sweeter than sugar.

23.      Although aspartame does not contain calories, scientific research demonstrates that it, like other nonnutritive sweeteners, is likely to cause weight gain.

24.      A 2009 review article found that the "addition of [nonnutritive sweeteners] to diet poses no benefit for weight loss or reduced weight gain without energy restriction," and noted "long-standing and recent concerns that inclusion of [nonnutritive sweeteners] in the diet promotes energy intake and contributes to obesity."[1]

25.      Another review article, in 2010, found that "[d]ata from large, epidemiologic studies support the existence of an association between artificially-sweetened beverage consumption and weight gain in children."[2]

26.      Another review article from 2010 said "research studies suggest that artificial sweeteners may contribute to weight gain."[3]

27.      A 2013 review article by a federally-funded Purdue University researcher, Susan E. Swithers, assessed differences between diet soda consumers and non-consumers among over 450,000 participants across 14 independent prospective cohort studies, with an average 16-year follow-up. Swithers found that "accumulating evidence suggests that frequent consumers of these sugar substitutes may also be at increased risk of excessive weight gain, metabolic syndrome, type 2 diabetes, and cardiovascular disease," and that "frequent consumption of high-intensity sweeteners may have the counterintuitive effect of inducing metabolic derangements." She further stated that "[r]ecent data from humans and rodent models have provided little support for [artificially sweetened beverages] in promoting weight loss or preventing negative health outcomes such as [type 2 diabetes], metabolic syndrome, and cardiovascular events. Instead, a number of studies suggest people who regularly consume [artificially sweetened beverages] are at increased risk comparted to those that do not consume

---

[1] Mattes RD, et al., "Nonnutritive Sweetener Consumption in Humans: Effects on Appetite and Food Intake and Their Putative Mechanisms." *Am. J. Clin. Nutr.*, Vol. 89, No. 1, pp. 1-14 (Jan. 2009).
[2] Brown RJ, et al., "Artificial Sweeteners: a Systematic Review of Metabolic Effects in Youth." *Int'l J. of Ped. Obesity*, Vol. 5, No. 4, pp. 305-12 (Aug. 2010).
[3] Yang, Q., "Gain Weight by 'Going Diet?' Artificial Sweeteners and the Neurobiology of Sugar Cravings." *Yale J. of Bio. & Med.*, Vol. 83, No. 2, pp. 101-108 (June 2010) [hereinafter "Yang"].

[artificially sweetened beverages]," and "with the magnitude of the increased risks similar to those associated with [sugar-sweetened beverages]."[4]

28.    A 2014 study found that "consumption of commonly used non-caloric artificial sweetener] formulations drives the development of glucose intolerance through induction of compositional and functional alterations to the intestinal microbiota," and because of this "link [between] [non-caloric artificial sweetener] consumption, symbiosis and metabolic abnormalities," found that artificial sweeteners "may have directly contributed to enhancing the exact epidemic that they themselves were intended to fight."[5]

29.    In 2015, researchers reported "a striking dose-response relationship," wherein "increasing [diet soda intake] was associated with escalating abdominal obesity, a pathway for cardiometabolic risk," and noted that "[h]igh incidences of overweight and obesity, hypertension, metabolic syndrome, diabetes mellitus, kidney dysfunction, heart attack, and hemorrhagic stroke have all recently been associated with frequent [nonnutritive sweetener intake] and [diet soda intake]."[6]

30.    Epidemiological studies also implicate artificial sweeteners in causing weight gain.  For example, the San Antonio Heart Study "observed a class, positive dose-response relationship between [artificially sweetened] beverage consumption and long-term weight gain," and found that consuming more than 21 artificially sweetened beverages per week, compared to those who consumed none, "was associated with almost-doubled risk" of overweight or obesity.[7]

31.    A study of beverage consumption among children and adolescents aged 6-19 found that "BMI is positively associated with consumption of diet carbonated beverages."[8]

---

[4] Swithers, SE, "Artificial Sweeteners Produce the Counterintuitive Effect of Inducing Metabolic Derangements." *Trends in Endocrinology & Metab.*, Vol. 24, No. 9, pp. 431-41 (Sept. 2013).
[5] Suez J, et al., "Artificial Sweeteners Induce Glucose Intolerance by Altering the Gut Microbiota." *Nature*, pp.181-86 (Oct. 2014).
[6] Fowler, S, et al., "Diet Soda Intake is Associated with Long-Term Increases in Waist Circumference in a Biethnic Cohort of Older Adults: The San Antonio Longitudinal Study of Aging." *J. of the Am. Geriatrics Society* (March 17, 2015).
[7] Fowler, S, et al., "Fueling the Obesity Epidemic? Artificially Sweetened Beverage Use and Long-Term Weight Gain." *Obesity*, Vol. 16, No. 8, pp. 1894-900 (Aug. 2008).
[8] Forshee RA, et al., "Total Beverage Consumption and Beverage Choices Among Children and Adolescents." *Int'l J. of Food Sci. & Nutr.*, Vol. 54, No. 4, pp. 297-307 (July 2003); *see also* Berkey CS, et al., "Sugar-Added Beverage sand Adolescent Weight Change." *Obesity Research*, Vol. 12, No. 5, pp. 778-88 (May 2004) (in study of more than 10,000 U.S. children aged 9-14, finding, for boys, intakes of diet soda "were significantly associated with weight gains").

32.    A two-year study of 164 children found that "[i]ncreases in diet soda consumption were significantly greater for overweight and subjects who gained weight as compared to normal weight subjects."[9]

33.    A July 2017 study found that artificial sweeteners did not lead to any significant weight loss in more than 1,000 participants in seven clinical trials. At the same time, combined data from 30 observational studies involving more than 400,000 participants showed that artificial sweeteners are associated with obesity, high blood pressure, type 2 diabetes and heart health problems.[10]

34.    A study published in August 2017 suggested artificial sweetener use increases the risk of type 2 diabetes by 21%, which is about half the increased risk seen with sugar-sweetened beverage use, at 43%.[11] Another study indicates daily diet soda consumption is associated with a 36% increase in risk of metabolic syndrome, and a 67% increase in risk of type 2 diabetes compared with non-drinkers.[12]

35.    Recent research, published in August 2017, suggests the likely mechanism of the counterintuitive effect of non-caloric sweeteners contributing to weight gain and other chronic, metabolic illness.

36.    In nature, sweetness signals energy. Generally, the greater the sweetness, the more calories that are available, so the human brain has evolved to expect the two to come together. When they do not, the brain can become confused, thinking there are fewer calories to burn. That is, artificial sweeteners, including aspartame acesulfame-potassium and sucralose, appear to promote weight gain, and to trigger metabolic syndrome and diabetes, because the brain misreads the number of calories present and reduces metabolism, resulting in more calories being stored in the body.

37.    This recent research came about when Yale University researcher Dana Small set out to determine whether the rewarding character of sweet foods was due to the calories

---

[9] Blum, JW, et al., "Beverage Consumption Patterns in Elementary School Aged Children Across a Two-Year Period." *J. of Am. Coll. of Nutr.*, Vol. 24, No. 2, pp. 93-98 (Apr. 2005).

[10] Azad, MB, et al., "Nonnutrive sweeteners and cardiometabolic health: a systematic review and meta-analysis of randomized controlled trials and prospective cohort studies." *Canadian Medical Association Journal*, Vol. 189, No. 28, pp. E929-E939 (July 17, 2017).

[11] Huang, M, et al., "Artificially sweetened beverages, sugar-sweetened beverages, plain water, and incident diabetes mellitus in postmenopausal women: the prospective Women's Health Initiative observational study." *Am. J. Clin. Nutr.*, Vol. 106, No. 2, pp. 614-22 (Aug. 2017).

[12] Nettleton, JA, et al., "Diet soda intake and risk of incident metabolic syndrome and type 2 diabetes in Multi-Ethnic Study of Artherosclerosis (MESA)." *Diabetes Care*, Vol. 32, No. 4, pp. 688-94 (Apr. 2009).

those foods contain. Small created five beverages. Each was sweetened with sucralose, an artificial sweetener, to taste about as sweet as a drink containing about 75 calories of sugar. Small then varied the calories by adding different amounts of a tasteless carbohydrate called maltodextrin, so that the five beverages contained 0, 27.5, 75, 112.5, and 150 calories. After subjects consumed each drink six times over a period of weeks, Small scanned their brains to see how each affected brain reward circuits, expecting that the higher-calorie drinks would stimulate a stronger reward response. However, the most "reinforcing" drink was the 75 calorie one, which stimulated a stronger brain response than both the 0 calorie and 150 calorie drinks.[13]

38.     This research led Small to test the body's metabolic response, which is the energy the body expends to process calories. The results repeated themselves, with the metabolic response to the high-calorie drink lower than the metabolic response to the medium-calorie drink. Thus, the researchers found that when there was a "mismatch" between sweetness and calories present, the calories present fail to trigger the body's metabolism. In addition, reward circuits in the brain did not register that calories had been consumed.[14]

39.     This research demonstrates that sweetness plays a role in how the body responds to food, inasmuch as it regulates the metabolic signal.

40.     In sum, calories consumed in a mismatched condition, such as when a person drinks a Diet Pepsi while eating food, are not efficiently metabolized at the time of ingestion, and may therefore be processed later, or stored, which can drive weight gain and further interfere with metabolism.

41.     In addition, some research has shown that sweetness—whether from sugar or non-caloric, artificial sources, increases appetite, which can lead to weight gain.[15] Moreover, "[i]nconsistent coupling between sweet taste and caloric content can lead to compensatory overeating and positive energy balance."[16]

---

[13] *See* Veldhuizen, MG, et al., "Integration of Sweet Taste and Metabolism Determines Carbohydrate Reward." *Current Biology*, Vol. 27, Issue 16, pp. 2476-85 (Aug. 2017).
[14] *See id.*
[15] *See* Yang, *supra* n.3 ("Preload experiments generally have found that sweet taste, whether delivered by sugar or artificial sweeteners, enhanced human appetite.").
[16] *Id.*

## PEPSI'S UNLAWFUL ACTS

**A.      Pepsi Misleadingly Marketed Diet Pepsi as Promoting Weight Loss or Healthy Weight Management**

42.      Because the artificial sweeteners in Diet Pepsi is likely to cause weight gain, rather than to help in weight loss or healthy weight management, Pepsi's marketing the product as "diet" is false and misleading.

43.      Pepsi is, or reasonably should be aware, of the scientific evidence that consuming the artificial sweeteners in Diet Pepsi can cause weight gain. That evidence has been in the published and in the public domain, and recounted in major news outlets.

44.      Despite that Pepsi is, or reasonably should have been aware that promoting Diet Pepsi as "diet" was false and misleading, Pepsi continued to do so anyway, because this representation is the major driver of Diet Pepsi sales.

45.      Moreover, while touting Diet Pepsi as "diet," and containing zero calories, Pepsi deceptively omitted material information, namely that despite its lack of calories, the consumption of Diet Pepsi can lead to weight gain and contribute to metabolic disease, diabetes, and cardiovascular disease.

**B.      Pepsi Violated FDA and New York Food Labeling Regulations**

46.      The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"), governs the labeling of foods and beverages. Pursuant to the New York State Agriculture and Markets Law § 201, §71.05,   New York has adopted the FDCA and its implementing regulations as its own law.

47.      The FDCA prohibits the labeling of food that is "false or misleading in any particular," 21 U.S.C. § 343(a).

48.      FDA regulations provide that companies may use the term "diet" in the brand name or label of a soft drink described in section 343(r)(2)(D) *only* when it is not false or misleading. *See* 21 U.S.C. § 343(r)(2)(D); 21 C.F.R. § 101.13(q)(2).

49.      Pepsi's labeling Diet Pepsi as "diet" is false and misleading for the reasons described herein. Accordingly, Pepsi has violated 21 U.S.C. §§ 343(a) and 343(r)(2)(D), 21 C.F.R. § 101.13(q)(2), and the corresponding sections of New York State Agriculture and Markets Law § 201, §71.05.

50.    In labeling Diet Pepsi, Pepsi also "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include that consuming the artificial sweeteners in Diet Pepsi can lead to weight gain or make it difficult to maintain a healthy weight.

51.    In labeling Diet Pepsi, Pepsi similarly failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Pepsi failed to disclose the increased risk of weight gain, and of serious chronic disease, likely to result from the usual consumption of Diet Pepsi in the customary manner.

52.    New York EDN. Law § 6815 similarly provides that "[a] drug or device shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular."

## PLAINTIFFS' PURCHASE, RELIANCE & INJURY

53.    Plaintiff ELIZABETH MANUEL has been a frequent purchaser of Diet Pepsi for many years.  For over 20 years, Plaintiff has purchased at least dozens of cans of Diet Pepsi each month, usually from convenience stores in New York.

54.    Plaintiff ELIZABETH MANUEL has struggled with obesity for many years. She purchased and consumed Diet Pepsi in large part because she believed, based on Pepsi's advertising the product as "Diet," that it would contribute to healthy weight management, and, due to its lack of calories, would not cause her to gain weight.

55.    Plaintiff VIVIEN GROSSMAN has been a frequent purchaser of Diet Pepsi for many years. For over 20 years, plaintiff has purchased at least dozens of cans of Diet Pepsi each month, usually from the ShopRite of Plainview, located at 444 Woodbury Rd, Plainview, NY 11803.

56.    Plaintiff VIVIEN GROSSMAN has struggled with obesity for many years. She purchased and consumed Diet Pepsi in large part because she believed, based on Pepsi's advertising the product as "Diet," that it would contribute to healthy weight management, and, due to its lack of calories, would not cause her to gain weight.

57.     Plaintiffs would not have purchased Diet Pepsi at the price they paid, and may not have purchased it at all, absent Pepsi's false, misleading, and unlawful labeling.

58.     The Diet Pepsi cost more than a product, represented to be a diet product, would cost if the truth were revealed that the product was not a diet product at all.

59.     If Pepsi were enjoined from making the misleading claims, the market demand and price for Diet Pepsi would drop, as it has been artificially and fraudulently inflated due to Pepsi's use of false, misleading, and unlawful labeling.

60.     For these reasons, the Diet Pepsi was worth less than what plaintiff paid for it.

61.     Instead of receiving a beverage that would help assist plaintiffs in achieving and maintaining a healthy weight, plaintiffs received a beverage whose consumption is likely to lead to weight gain.

62.     Plaintiffs lost money as a result of Pepsi's deceptive claims and unfair practices in that they did not receive what they paid for when purchasing the Diet Pepsi.

63.     Plaintiffs detrimentally altered their position and suffered damages in an amount equal to what they paid for the product.

64.     Plaintiffs would consider purchasing Diet Pepsi in the future if the product were properly labeled.

## CLASS ACTION ALLEGATIONS

65.     Pursuant to Fed. R. Civ. P. 23, plaintiffs seek to represent a class comprised of all persons who, on or after October 16, 2011, purchased in the State of New York, for personal or household use, and not for resale, Diet Pepsi in cans or bottles.

66.     Plaintiffs nevertheless reserve the right to divide into subclasses, expand, narrow, or otherwise modify the class definition prior to (or as part of) filing a motion for class certification.

67.     The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court. Fed. R. Civ. P. 23(a)(1).

68.     There are questions of law and fact common to the class, Fed. R. Civ. P. 23(a)(2), which plaintiffs may seek to litigate on an individual basis pursuant to Fed. R. Civ. P. 23(c)(4), including without limitation:

    a.   Whether Diet Pepsi sold during the class period was likely to result in weight gain, or increased risk of metabolic disease, diabetes, and cardiovascular disease;

    b.   Whether advertising Diet Pepsi as "diet" would be likely to deceive a reasonable consumer;

    c.   Whether Diet Pepsi sold during the class period was misbranded because it was in violation of any FDA or New York state food labeling statute or regulation;

    d.   Whether Pepsi expressly or impliedly warranted that Diet Pepsi was "diet";

    e.   Whether Pepsi impliedly warranted that Diet Pepsi would assist in weight loss or healthy weight management;

    f.   Whether Pepsi breached any express or implied warranties;

    g.   The proper injunctive or prospective relief; and

    h.   The proper amount of reasonable litigation expenses and attorneys' fees.

69.     Plaintiffs' claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Pepsi's conduct.

70.     Plaintiffs will fairly and adequately represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class action litigation, including within the food and beverage industry.

71.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

72.     Questions of law and fact common to the class predominate over any questions affecting only individual class members.

73.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and may be appropriate for certification "with respect to particular issues" under Rule 23(c)(4).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### UNFAIR AND DECEPTIVE BUSINESS PRACTICES, N.Y. GEN. BUS. L. § 349

74.    Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

75.    Pepsi's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

76.    As alleged herein, by advertising, marketing, distributing, and selling the Product Diet Pepsi to plaintiffs and other class members with false or misleading claims and representations, Pepsi engaged in, and continues to engage in, deceptive acts and practices.

77.    As alleged herein, by misbranding the product Diet Pepsi, Pepsi engaged in, and continues to engage in, deceptive acts and practices.

78.    Pepsi's conduct was materially misleading to plaintiffs and the class.

79.    During the class period, Pepsi's carried out a plan, scheme and course of conduct which was consumer oriented.

80.    As a direct and proximate result of Pepsi's violation of N.Y. Gen. Bus. L. § 349, plaintiffs and the class were injured and suffered damages.

81.    The injuries to plaintiffs and the class were foreseeable to Pepsi and, thus Pepsi's actions were unconscionable and unreasonable.

82.    Pepsi is liable for damages sustained by plaintiffs and the class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

83.    Furthermore, pursuant to N.Y. Gen. Bus. L. § 349 (h), "In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

84.     Plaintiffs further makes a claim for all of the above damages pursuant to N.Y. Gen. Bus. L. § 349 (h).

85.     Pursuant to N.Y. Gen. Bus. L. § 349(h), plaintiffs and the class seek an Order enjoining Pepsi from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

## SECOND CAUSE OF ACTION
## FALSE ADVERTISING, N.Y. GEN. BUS. L. § 350

86.     Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

87.     Pepsi has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

88.     Pepsi's use of the term "diet" in marketing Diet Pepsi is deceptive in light of the strong evidence that aspartame acesulfame-potassium and sucralose causes weight gain.

89.     Pepsi knew, or reasonably should have known, that marketing Diet Pepsi as "diet" was untrue or misleading.

90.     As a result of Pepsi's false advertising, plaintiffs and the class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Pepsi is permanently enjoined by this Court.

## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

91.     Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

92.     Pepsi misrepresented to plaintiffs and the class the characteristics and benefits of the product Diet Pepsi, and omitted material facts concerning the true nature of the products.

93.     Pepsi owed a duty to plaintiffs and the class to exercise reasonable care when issuing statements or disclosures regarding the product Diet Pepsi's characteristics and benefits.

94.    Pepsi's statements and disclosures regarding the characteristics and benefits of the product Diet Pepsi were likely to deceive plaintiffs and the class.

95.    Pepsi's omissions of material information were likely to deceive plaintiffs and the class in that, had Pepsi not omitted such material information, the disclosure of that information would have resulted in plaintiffs and the class acting differently, for example, not purchasing the product Diet Pepsi.

96.    Pepsi's claims have influenced or are likely to influence future decisions of consumers and the buying public. Plaintiffs and the class, by purchasing the product Diet Pepsi, reasonably acted in reliance on the truth of Pepsi's representations, and the absence of the material information that Pepsi deceptively omitted.

97.    As a direct and proximate result of plaintiffs' and the class's reliance upon the representations made by Pepsi, plaintiffs and the class have sustained damages and ascertainable loss.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION/FRAUD**

**N.Y. C.P.L.R. 213**

98.    Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

99.    Pepsi has engaged and is engaging in intentional misrepresentation resulting in fraud in violation of N.Y. C.P.L.R. 213.

100.    Pepsi represented to the public, including to plaintiffs and the class, that the product Diet Pepsi would assist in weight loss or health weight management, and would not contribute to weight gain.

101.    Pepsi 's representations were false and misleading.

102.    At the time Pepsi made statements or representations regarding the nature and qualities of the product Diet Pepsi, Pepsi knew that the statements and representations were false and misleading.

103.    Pepsi made the misrepresentations alleged herein with the intention of inducing and persuading plaintiffs and the class to purchase the product Diet-Pepsi.

104.   Pepsi further withheld and omitted material information about the product Diet-Pepsi with the intention of inducing and persuading plaintiffs and the class to purchase the products.

105.   Plaintiffs and the class, by purchasing the product Diet-Pepsi, reasonably relied on Pepsi 's false and misleading statements and misrepresentations, and on the absence of the material information that Pepsi deceptively omitted.

106.   As a direct and proximate result of Pepsi 's intentional misrepresentations and deceptive omissions, plaintiffs and the class were induced to pay, and pay a premium for, the product Diet-Pepsi.

107.   Plaintiffs and the class were damaged through their purchase and use of the product Diet-Pepsi.

108.   Plaintiffs' and the class's reliance on Pepsi's statements and representations of the nature and characteristics of the product Diet-Pepsi was reasonable. As a result, Pepsi is guilty of malice, oppression, and fraud, and plaintiffs and the class are therefore entitled to recover exemplary or punitive damages.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

109.   Plaintiffs realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

110.   Through the label of Diet Pepsi, Pepsi made affirmations of fact or promises, and made descriptions of goods, that formed part of the basis of the bargain, in that plaintiffs and the class purchased the Diet Pepsi in reasonable reliance on those statements.

111.   Specifically, Pepsi made statements that Diet Pepsi is "diet."

112.   Pepsi breached its express warranties by selling products that are not "diet," i.e., do not assist in weight loss or healthy weight management, but which in fact cause weight gain.

113.   That breach actually and proximately caused injury in the form of the lost purchase price that plaintiffs and class members paid for the Diet Pepsi.

114.   Plaintiffs gave Pepsi notice of the breach before filing or asserting the claim, but Pepsi failed to remedy the breach.

115.     As a result, plaintiffs seek, on behalf of themselves and other class members, actual damages arising as a result of Pepsi's breach of express warranty.

### SIXTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

116.     Plaintiffs re-alleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

117.     Pepsi, through its acts and omissions set forth herein, in the sale, marketing and promotion of Diet Pepsi, made representations to plaintiffs and the class that Diet Pepsi would assist in weight loss or health weight management, and would not contribute to weight gain.

118.     Pepsi is a merchant with respect to the goods of this kind which were sold to plaintiffs and the class, and there was, in the sale to plaintiffs and other consumers, an implied warranty that those goods were merchantable.

119.     However, Pepsi breached that implied warranty in that Diet Pepsi does not contribute to weight loss or healthy weight management, and instead contributes to weight gain, as set forth in detail herein.

120.     As an actual and proximate result of Pepsi's conduct, plaintiffs and the class did not receive goods as impliedly warranted by Pepsi to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

121.     Plaintiffs gave Pepsi notice of the breach before filing or asserting the claims, but Pepsi failed to remedy the breach.

122.     As a result, plaintiffs seeks, on behalf of herself and other class members, actual damages arising as a result of Pepsi's breaches of implied warranty.

### SEVENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF FITNESS

123.     Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

124.     In selling the product Diet Pepsi to plaintiffs and the class, Pepsi impliedly warranted that the goods sold were fit for their particular purpose, e.g., would assist in weight loss or health weight management, and would not contribute to weight gain

125.    Pepsi breached the warranty in that the product Diet Pepsi did not provide the benefits advertised.

126.    Plaintiffs and the class suffered injury as a result of Pepsi's breach in that they paid money for a product that does not contribute to weight loss or healthy weight management, and instead contributes to weight gain, as set forth in detail herein.

127.    Plaintiffs, on behalf of themselves and the class, seek actual damages for Pepsi's breach of warranty.

## EIGHTH CAUSE OF ACTION
## RESTITUTION

128.    Plaintiffs re-allege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

129.    By virtue of deceptive and unlawful business practices, Pepsi charged and received payment for the product Diet Pepsi. Pepsi should not be permitted to retain those payments in equity and good conscience, as those payments were obtained in contravention of the law. To permit Pepsi to retain those payments would wrongfully confer a benefit upon Pepsi at the expense of plaintiffs and the class.

130.    Under the circumstances, it would be inequitable for Pepsi to retain these ill-gotten benefits, and therefore restitution to plaintiffs and the class is warranted.

## PRAYER FOR RELIEF

131.    Wherefore, plaintiffs, on behalf of themselves, all others similarly situated, and the general public, prays for judgment against Pepsi as to each and every cause of action, and the following remedies:

a.    An Order certifying this action as a class action, appointing plaintiffs as Class Representatives, appointing their counsel as Class Counsel, and requiring Pepsi to bear the cost of class notice;

b.    An Order enjoining Pepsi from marketing Diet Pepsi as "diet" so long as it is sweetened with a non-nutritive artificial sweetener;

c.    An Order requiring Pepsi to engage in a corrective advertising campaign.

      d.      An Order requiring Pepsi to pay restitution to restore funds that may have been acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the statutes cited herein;

      e.      An Order requiring Pepsi to pay all statutory, compensatory, and punitive damages permitted under the causes of action alleged herein;

      f.      An Order requiring Pepsi to disgorge or return all monies, revenues, profits, or other unjust enrichment obtained by means of any wrongful or unlawful act or practice;

      g.      Pre- and post-judgment interest;

      h.      Costs, expenses, and reasonable attorneys' fees; and

      i.      Any other and further relief as may later be requested, or which the Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: January 2, 2018           /s/ Abe Melamed____

**DEREK SMITH LAW GROUP, PLLC**
DEREK T. SMITH (DS1747)
*dtslaws@msn.com*
ABRAHAM Z. MELAMED (AM1520)
*Abe@dereksmithlaw.com*
1 Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (JF3831)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (*admitted phv*)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (*admitted phv*)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**SACKS WESTON DIAMOND, LLC**
ANDREW SACKS (*phv to be filed*)
*asacks@sackslaw.com*
JOHN WESTON (*admitted phv*)
*jweston@sackslaw.com*
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Phone: (215) 764-3008

***Counsel for Plaintiffs and the Proposed Class***